UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CARL D. GOODMAN                                                                    PLAINTIFF

V.                           NO. 3:19CV00380 JM-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]                                  DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction:

Plaintiff, Carl D. Goodman ("Goodman"), applied for disability benefits on July 7, 2016, alleging disability beginning on September 1, 2015.[2] (Tr. at 11). After

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Goodman amended his alleged onset date to July 7, 2016. (Tr. at 11).

1

conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 26). The Appeals Council declined to review the ALJ's decision. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.     The Commissioner's Decision:

The ALJ found that Goodman had not engaged in substantial gainful activity since the amended alleged onset date of July 7, 2016. (Tr. at 13). At Step Two, the ALJ found that Goodman had the following severe impairments: degenerative disc disease, neuropathy, chronic venous insufficiency, depression, and anxiety. (Tr. at 14).

After finding that Goodman's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Goodman had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) he could only occasionally balance, stoop, and crouch, and he could not climb ropes, ladders, or scaffolds; (2) he could occasionally overhead reach with the dominant upper extremity; (3) he could perform work where interpersonal contact is incidental to the work performed and the complexity of tasks can be learned by demonstration or repetition within 30 days; and (4) the work has

few variables and little judgment, with supervision that is simple, direct, and concrete. (Tr. at 18).

The ALJ determined that, based on his RFC, Goodman was unable to perform any past relevant work. (Tr. at 24). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Goodman's age, education, work experience, and RFC, he could perform jobs in the nationally economy, such as cashier II and sales attendant. (Tr. at 25). Thus, the ALJ found that Goodman was not disabled. *Id*.

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an

opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.   Goodman's Arguments on Appeal

Goodman contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ should have found alcohol use disorder to be a severe impairment at Step Two. The Court agrees.

The record is replete with references to Goodman's alcohol dependency. At several places in the record, he said he drank a fifth of liquor every 2-3 days and 30

beers per week. (Tr. at 145-149, 868). Goodman said his girlfriend left him because of his heavy drinking, and that he had been arrested for several DUI's. (Tr. at 516, 554-558). He said he drank until he passed out, and when he wakes up at 3:00 am he starts drinking. (Tr. at 220-224).

Multiple doctors told Goodman to stop drinking. They recognized that he self-treated his anxiety with alcohol, but that only made it worse. (Tr. at 210-214, 558). Alcohol use complicated depression. (Tr. at 516-518). Drinking also caused Goodman's memory fog. (Tr. at 854). He complained of seizures but his doctors said that alcohol brought them on. (Tr. at 156). They warned that drinking while on prescribed blood thinners could be fatal. (Tr. at 585).

On multiple occasions, Goodman was diagnosed with alcohol use disorder, alcoholism, alcohol dependency, and alcohol-induced anxiety disorder. (Tr. at 152, 214, 230, 558). The Disability Determination Services expert doctors diagnosed substance addiction disorder. (Tr. at 210-228).

Goodman said he started drinking in the 9th grade and was an alcoholic by age 18. (Tr. at 550-555). He tried rehab in 2004, but regressed thereafter. (Tr. at 508-512). His liver enzymes were consistently elevated and his cardiac doctor told him to quit drinking altogether. (Tr. at 634-714). Goodman was prescribed medication to help him stop drinking. (Tr. at 102-112).

The ALJ mentioned alcohol use only once in the opinion. (Tr. at 21). He did not discuss it at all at Step Two, although he addressed Goodman's seizure disorder in depth (alcohol use brought on seizures). (Tr. at 14). He did not discuss Goodman's doctors' recommendations to quit drinking, or the adverse effects drinking had on other health issues. The ALJ did not properly consider Goodman's alcohol addiction.

### III. **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred at Step Two.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 6th day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE